UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOHN HAROLD LUEBBERS,<br><br>   Petitioner,<br><br>  v.<br><br>CALIFORNIA DEPARTMENT OF<br>CORRECTIONS AND<br>REHABILITATION, et al.,<br><br>   Respondent. | No. 2:15-cv-02348 MCE KJN<br><br><br>FINDINGS & RECOMMENDATIONS |

I. <u>Introduction</u>

   Petitioner is a state prisoner, proceeding without counsel, with an application for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. Petitioner challenges his April 2012 conviction for first degree murder. Petitioner was sentenced to fifty years-to-life in state prison. Petitioner claims that trial counsel was ineffective for failing to call witnesses that could testify to facts supporting second degree murder and voluntary manslaughter, that petitioner was prepared to testify as to his state of mind, that counsel provided ineffective assistance of counsel for the court's failure to instruct the jury regarding voluntary manslaughter, and that trial counsel was ineffective for conceding intent to kill and malice aforethought during closing arguments to the jury. After careful review of the record, this court concludes that the petition should be denied.

//

1

1    II.  <u>Procedural History</u>

2          On April 24, 2012, a jury found petitioner guilty of first degree murder (Cal. Pen. Code,

3    § 187(a)) and found true three separate gun use enhancements (Cal. Pen. Code, § 12022.53(b)-

4    (d)).  On June 15, 2012, petitioner was sentenced to fifty years-to-life in state prison.  (LD 1; see

5    also LD 7 at 601-602 & LD 8 at 8-9.)

6          Petitioner appealed the conviction (LD 7 at 604) to the California Court of Appeal, Third

7    Appellate District.  (LD 15-17.)  The California Court of Appeal for the Third District affirmed

8    the conviction on May 6, 2014.   (LD 2.)

9          Petitioner filed a petition for review in the California Supreme Court, which was denied

10   on August 13, 2014.  (LD 3-4.)

11         On November 12, 2015, petitioner filed the instant petition.  (ECF No. 1.)  Respondent

12   moved to dismiss the petition as untimely and as presenting both exhausted and unexhausted

13   claims.  (ECF No. 7.)  Petitioner opposed the motion, arguing it was timely due to a court holiday,

14   and asked this court to stay the proceedings pending exhaustion of certain claims in the state

15   courts.  (ECF No. 13.)  In response, respondent withdrew the motion to dismiss (LD 14) and

16   petitioner filed a motion to stay these proceedings on May 2, 2016 (LD 16).

17         Meanwhile, on May 18, 2016, petitioner filed a petition for writ of habeas corpus with the

18   El Dorado County Superior Court.  (LD 18.)  That court denied the petition on May 25, 2016.

19   (LD 19; see also ECF No. 18.)

20         On June 13, 2016, the undersigned recommended the motion to stay be granted (LD 20)

21   and the district judge issued an order staying these proceedings on August 8, 2016 (LD 21).

22         Thereafter, on December 30, 2016, petitioner filed a habeas corpus petition with the

23   California Court of Appeal, Third Appellate District.  (LD 20.)  The state appellate court denied

24   the petition on March 10, 2017.  (LD 21.)

25         Finally, on or about June 29, 2017, petitioner filed a petition for writ of habeas corpus

26   with the California Supreme Court.  (LD 22.)  The state's highest court denied the petition on

27   October 25, 2017.  (LD 23.)

28   ////

The stay of these proceedings was lifted by order dated November 7, 2017. (ECF No. 23.)

Respondent filed its answer to the petition on February 5, 2018 (ECF No. 27) and petitioner filed a traverse on March 7, 2018 (ECF No. 29).

III. Facts[1]

In its unpublished memorandum and opinion affirming petitioner's judgment of conviction on appeal, the California Court of Appeal for the Third Appellate District provided the following factual summary:

> *Prosecution Case–in–Chief*
>
> Louisiana Schnell School is an elementary school located in Placerville. Joy Fausel was the school secretary. Dawn Cooper was the office clerk. Kara Tracy was a paraeducator (instructional aide) and food service worker. Sam Lacara was the school principal. Defendant was the janitor.
>
> *A. Monday, January 31, 2011*
>
> On Monday, January 31, 2011, defendant was "in a fairly good mood." Cooper and Tracy recalled defendant joking and laughing and recounting his golf game with Lacara the previous day.
>
> That same day, Fausel, Lacara, defendant, and Superintendent Nancy Lynch prepared for interviews that were scheduled for the next day. The interviews were for the position of night janitor. Defendant was the day janitor.
>
> *B. Tuesday, February 1, 2011*
>
> On the morning of Tuesday, February 1, 2011, interviews for the night janitor position were conducted off campus at the district office. The interview panel included Lynch, Fausel, Lacara, and defendant. At the conclusion of the interviews, there was disagreement about who should be offered the position. Tension developed. Lynch, Fausel, and Lacara preferred one candidate, but defendant said he would not work with that person. Defendant preferred a different candidate. Later that morning, Lacara telephoned the candidates' references. To his surprise, neither candidate's references checked out.
>
> In the early afternoon, defendant and Lacara had a confrontation outside the multipurpose room. Cooper and Fausel saw the confrontation from the main office. Defendant was yelling and

[1] The facts are taken from the May 6, 2014, opinion of the California Court of Appeal for the Third Appellate District in People v. Luebbers, No. C071671, a copy of which was lodged by respondent as LD 2 on January 15, 2016. The opinion is also appended as Exhibit A to petitioner's habeas petition. (See ECF No. 1 at 7-31.)

pointing fingers; Lacara was angry too. They argued for five to 10 minutes.

Cooper spoke to defendant after the argument. He was visibly angry and initially waved her off but she went over and spoke with him. Defendant said that the politicians in the school district were "fucking liars" and that he was tired of them messing with things. He said, "they don't know who they are messing with but they will." Cooper said, "that's enough" and left.

Tracy spoke to defendant at the end of her kitchen shift while he was cleaning the multipurpose room. Defendant looked angry and his face was red. Defendant was angry at Lacara, Fausel, and Lynch because they did not choose the candidate he preferred. Defendant said he would "show" Lacara.

*C. Wednesday, February 2, 2011*

Typically, Lacara would arrive at 7:30 a.m., spend time in his office, and then go to the front of the school to greet students from 8:30 a.m. to 9:00 a.m. On the morning of February 2, 2011, he did not go out to greet the students. He spoke with Fausel in his office for five to 10 minutes. Then he went to a location Fausel did not know.

Around 9:40 a.m., as Tracy was walking with children to a classroom, she heard defendant and Lacara arguing in defendant's office. She heard defendant loudly say "fuck" or "fucking." She quickly moved the children away. When she got to her classroom, she saw defendant walk towards her building and then turn between two buildings and head toward a parking area. She heard him enter his truck, start the engine, and drive away. To drive from the school to defendant's residence takes approximately 11 to 13 minutes.

Later, back in the office, Lacara told Cooper and Fausel, "I've just had an argument with [defendant]. I've taken away his keys and sent him home to cool off." Lacara then went to the cafeteria to get things ready for lunch. Lacara did not say that he had fired defendant, and Cooper never heard anyone assert that defendant had been fired. Although Lacara was the principal, he did not have the authority to terminate a school district employee without using an existing process.

Sometime later, while Cooper and Fausel were in the main office, they heard Lacara's office telephone and his cellular telephone ringing in succession; the successive ringings repeated approximately four times. Then Cooper's telephone rang and she answered it. The caller was defendant. He said, "hey Coopie, is Sam there?" Defendant did not sound angry and the conversation seemed normal. Defendant wanted to speak to Lacara, so Cooper put defendant on hold and contacted Lacara in the cafeteria by way of walkie-talkie. Lacara returned to the office and spoke with defendant on the telephone. The conversation started off quiet but, as it progressed, Lacara became angry and his tone of voice elevated while responding to defendant. Lacara said that he "was not a fucking politician" and "was not a fucking liar." Fausel shut the door to

Lacara's office to give him some privacy.

After the telephone call, Lacara left the office and went to Tracy's classroom for a scheduled classroom observation. He told the teacher for whom Tracy works that he was not going to do the observation and that he had other issues to take care of.

Around 10:30 a.m., Lacara's office telephone rang again. Then Cooper received a second telephone call from defendant. His demeanor again seemed normal. Defendant again asked to speak to Lacara. Cooper again contacted Lacara by walkie-talkie, and Lacara again returned to his office to take the call. Like the previous conversation, this one started out quiet and grew louder. Lacara said that he was "not a fucking liar, nor was he a fucking politician," nor was he "a political sellout."

Seconds after the conversation ended, defendant entered the school office through a side door. His left hand was holding a cellular telephone up to his ear. His right hand was holding a gun. Defendant walked with a brisk and purposeful stride toward and into Lacara's office. Lacara was sitting behind his desk. Defendant positioned himself in front of the desk, held the gun with two hands, and pointed the gun at Lacara. Defendant said words to the effect of, "this is for you, mother fucker." Defendant then fired three shots at Lacara. After the third shot, Fausel saw defendant leaning over Lacara's desk with his gun pointed downward.

Defendant turned around and saw Fausel. He said to her, "You fucking bitch" or "this one[']s for you, bitch" or "you're a part of this too, bitch." He started to approach her with his gun pointed at her face. Fausel started to close her door and noticed a kindergarten student sitting at a desk outside her door. She grabbed the child and said, "come with me." Then she pulled him into her office, pushed him onto the ground behind her, and slammed and locked the door.

Cooper, who sat in the main office, went under her desk. After a few moments Fausel and Cooper heard the side door open and close. Then it was quiet. Fausel crawled to the other side of her desk and telephoned 9–1–1.

Cooper went to Lacara's office to check on him. Lacara was lying on his stomach and forearms. He was moaning and trying to push himself up on his elbows. Cooper knelt beside him and tried to comfort him. She attempted to activate the school's lockdown alarm but it did not work. Then she placed a telephone call to all the rooms on campus. When the call ended she heard breath "whoosh" out of Lacara's body. As she stood there, she saw the first police officer arrive at the office door. Fausel opened the door for the officer.

Placerville Police Officer Duskin Franz was the first to arrive. He saw Lacara lying on the floor, unresponsive.

El Dorado County Sheriff's Detective Richard Strasser learned from radio broadcasts that defendant was the suspect. He drove to defendant's residence where he and other officers took defendant into

custody. Defendant appeared lucid.

Placerville Police Officer Brody Jordan was the crime scene investigator. He collected a yellow notepad from Lacara's desk. Written on the notepad, in Lacara's handwriting, was the following:

"Opened door John I bought that toilet seat this morning.

"'I don't give a fuck.' John

"Then he proceeded to call me a (unintelligible) fucking politician, that I had it all planned out in interviews yesterday to take the district's choice,

"'No I didn't that is not true, after all I've been through with you, you think I'm lying.'

"'Yes you are a (unintelligible) lying politician'

"I responded with give me your keys that's out of line.

"He called the office and said what you are saying, your [sic] taking my job.

"(unintelligible) no (unintelligible)."

Officer Jordan saw a bullet hole in the top of Lacara's desk. An expended copper jacket round was under the desk.

Officer Jordan also collected evidence at defendant's residence. He collected a .357 magnum handgun from the master bedroom. Three expended shell casings and three live rounds were found in a trash can in the garage. Additional unfired ammunition was found in a small safe in the master bedroom. The shell casings in the trash can had the same manufacturing markings as the rounds found inside the safe. The round found in Lacara's office was the same bullet type as the other ammunition.

Criminalist Robert Wilson examined the handgun collected from defendant's residence. It did not have any malfunctions. The gun had fired the three expended shell casings found in the trash can.

Dr. Stephany Fiore, a forensic pathologist, performed an autopsy on Lacara. She found three bullet wounds: one nonfatal, one probably fatal, and one definitely fatal.

*Defense*

The defense rested without presenting evidence or testimony.

(People v. Luebbers, slip op. at 2-7.)

////

////

1    IV.  Standards for a Writ of Habeas Corpus

2          An application for a writ of habeas corpus by a person in custody under a judgment of a

3    state court can be granted only for violations of the Constitution or laws of the United States.  28

4    U.S.C. § 2254(a).  A federal writ is not available for alleged error in the interpretation or

5    application of state law.  See Wilson v. Corcoran, 562 U.S. 1, 5 (2010); Estelle v. McGuire, 502

6    U.S. 62, 67-68 (1991).

7          Title 28 U.S.C. § 2254(d) sets forth the following standards for granting federal habeas

8    corpus relief:

9             An application for a writ of habeas corpus on behalf of a person in
              custody pursuant to the judgment of a State court shall not be granted
10            with respect to any claim that was adjudicated on the merits in State
              court proceedings unless the adjudication of the claim -
11
                 (1) resulted in a decision that was contrary to, or involved an
12            unreasonable application of, clearly established Federal law, as
              determined by the Supreme Court of the United States; or
13
                 (2) resulted in a decision that was based on an unreasonable
14            determination of the facts in light of the evidence presented in the
              State court proceeding.
15

16   28 U.S.C. § 2254(d).

17         For purposes of applying § 2254(d)(1), "clearly established federal law" consists of

18   holdings of the United States Supreme Court at the time of the last reasoned state court decision.

19   Thompson v. Runnels, 705 F.3d 1089, 1096 (9th Cir. 2013) (citing Greene v. Fisher, 132 S. Ct.

20   38, 44-45 (2011)); Stanley v. Cullen, 633 F.3d 852, 859 (9th Cir. 2011) (citing Williams v.

21   Taylor, 529 U.S. 362, 412 (2000)).  Circuit court precedent "may be persuasive in determining

22   what law is clearly established and whether a state court applied that law unreasonably."  Stanley,

23   633 F.3d at 859 (quoting Maxwell v. Roe, 606 F.3d 561, 567 (9th Cir. 2010)).  However, circuit

24   precedent may not be "used to refine or sharpen a general principle of Supreme Court

25   jurisprudence into a specific legal rule that th[e] [Supreme] Court has not announced."  Marshall

26   v. Rodgers, 569 U.S. 58, 64 (2013) (citing Parker v. Matthews, 132 S. Ct. 2148, 2155 (2012) (per

27   curiam)).  Nor may it be used to "determine whether a particular rule of law is so widely accepted

28   among the Federal Circuits that it would, if presented to th[e] [Supreme] Court, be accepted as

7

correct. Id. Further, where courts of appeals have diverged in their treatment of an issue, it cannot be said that there is "clearly established Federal law" governing that issue. Carey v. Musladin, 549 U.S. 70, 77 (2006).

A state court decision is "contrary to" clearly established federal law if it applies a rule contradicting a holding of the Supreme Court or reaches a result different from Supreme Court precedent on "materially indistinguishable" facts. Price v. Vincent, 538 U.S. 634, 640 (2003). Under the "unreasonable application" clause of § 2254(d)(1), a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from the Supreme Court's decisions, but unreasonably applies that principle to the facts of the prisoner's case. [2] Lockyer v. Andrade, 538 U.S. 63, 75 (2003); Williams v. Taylor, 529 U.S. at 413; Chia v. Cambra, 360 F.3d 997, 1002 (9th Cir. 2004). In this regard, a federal habeas court "may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." Williams v. Taylor, 529 U.S. at 411. See also Schriro v. Landrigan, 550 U.S. 465, 473 (2007); Lockyer, 538 U.S. at 75 (it is "not enough that a federal habeas court, in its 'independent review of the legal question,' is left with a '"firm conviction"' that the state court was '"erroneous"'"). "A state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." Harrington v. Richter, 562 U.S. 86, 101 (2011) (quoting Yarborough v. Alvarado, 541 U.S. 652, 664 (2004)). Accordingly, "[a]s a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fair-minded disagreement." Richter, 562 U.S. at 103.

////

---

[2] Under § 2254(d)(2), a state court decision based on a factual determination is not to be overturned on factual grounds unless it is "objectively unreasonable in light of the evidence presented in the state court proceeding." Stanley, 633 F.3d at 859 (quoting Davis v. Woodford, 384 F.3d 628, 638 (9th Cir. 2004)).

If the state court's decision does not meet the criteria set forth in § 2254(d), a reviewing court must conduct a de novo review of a habeas petitioner's claims. Delgadillo v. Woodford, 527 F.3d 919, 925 (9th Cir. 2008); see also Frantz v. Hazey, 533 F.3d 724, 735 (9th Cir. 2008) (en banc) ("[I]t is now clear both that we may not grant habeas relief simply because of § 2254(d)(1) error and that, if there is such error, we must decide the habeas petition by considering de novo the constitutional issues raised").

The court looks to the last reasoned state court decision as the basis for the state court judgment. Stanley, 633 F.3d at 859; Robinson v. Ignacio, 360 F.3d 1044, 1055 (9th Cir. 2004). If the last reasoned state court decision adopts or substantially incorporates the reasoning from a previous state court decision, this court may consider both decisions to ascertain the reasoning of the last decision. Edwards v. Lamarque, 475 F.3d 1121, 1126 (9th Cir. 2007) (en banc). "When a federal claim has been presented to a state court and the state court has denied relief, it may be presumed that the state court adjudicated the claim on the merits in the absence of any indication or state-law procedural principles to the contrary." Richter, 562 U.S. at 99. This presumption may be overcome by a showing "there is reason to think some other explanation for the state court's decision is more likely." Id. at 99-100 (citing Ylst v. Nunnemaker, 501 U.S. 797, 803 (1991)). Similarly, when a state court decision on petitioner's claims rejects some claims but does not expressly address a federal claim, a federal habeas court must presume, subject to rebuttal, that the federal claim was adjudicated on the merits. Johnson v. Williams, 568 U.S. 289, (2013) (citing Richter, 562 U.S. at 98. If a state court fails to adjudicate a component of the petitioner's federal claim, the component is reviewed de novo in federal court. Wiggins v. Smith, 539 U.S. 510, 534 (2003).

Where the state court reaches a decision on the merits but provides no reasoning to support its conclusion, a federal habeas court independently reviews the record to determine whether habeas corpus relief is available under § 2254(d). Stanley, 633 F.3d at 860; Himes v. Thompson, 336 F.3d 848, 853 (9th Cir. 2003). "Independent review of the record is not de novo review of the constitutional issue, but rather, the only method by which we can determine whether a silent state court decision is objectively unreasonable." Himes, 336 F.3d at 853. Where no

reasoned decision is available, the habeas petitioner still has the burden of "showing there was no reasonable basis for the state court to deny relief." Richter, 562 U.S. at 98.

A summary denial is presumed to be a denial on the merits of the petitioner's claims. Stancle v. Clay, 692 F.3d 948, 957 & n.3 (9th Cir. 2012). While the federal court cannot analyze just what the state court did when it issued a summary denial, the federal court must review the state court record to determine whether there was any "reasonable basis for the state court to deny relief." Richter, 562 U.S. at 98. This court "must determine what arguments or theories . . . could have supported the state court's decision; and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision of [the Supreme] Court." Id. at 101. The petitioner bears "the burden to demonstrate that 'there was no reasonable basis for the state court to deny relief.'" Walker v. Martel, 709 F.3d 925, 939 (9th Cir. 2013) (quoting Richter, 562 U.S. at 98).

When it is clear, however, that a state court has not reached the merits of a petitioner's claim, the deferential standard set forth in 28 U.S.C. § 2254(d) does not apply and a federal habeas court must review the claim de novo. Stanley, 633 F.3d at 860; Reynoso v. Giurbino, 462 F.3d 1099, 1109 (9th Cir. 2006).

V. Petitioner's Claims

A. *Ineffective Assistance of Counsel: Failure to Present Heat of Passion Defense*

Petitioner claims that trial counsel was ineffective for failing to present evidence of a heat of passion defense. (ECF No. 1-4 at 9-17.) Respondent contends the state court's adjudication of the claim was reasonable, and thus precludes relief. (ECF No. 27 at 20-27.) In the traverse, petitioner argues the state court's determination of the claim was unreasonable and maintains relief is appropriate. (ECF No. 29.)

The last reasoned rejection of petitioner's first claim is the decision of the El Dorado County Superior Court following submission of a state habeas petition. The state court addressed this claim as follows:

> It has long been held that the initial burden for *habeas* relief is on petitioner. He must: "… plead adequate grounds for relief by

10

petition, which should state fully and with particularity the facts on which relief is sought and include copies of reasonably available documentary evidence supporting the claim, including pertinent portions of transcripts and affidavits or declarations. Conclusory allegations made without any explanation of the basis for the allegations do not warrant relief, let alone an evidentiary hearing. (*People v Duvall* (1995) 9 Cal.4th 464, 474.)

Reduced to its essence, the current petition simply offers the petitioner's own self-serving declaration in support of the petition. It does not support the relief sought. The other portions of the Record appended do nothing other than set forth the record of events. They do not support the relief sought.

Further, the petitioner surmises that the report and testimony of Detective Strasser would have been admissible. The report is inadmissible hearsay. The detective's opinion is improper opinion testimony, as the detective is an officer, not a mental health professional and therefore inadmissible. Dr. Schaffer's report was a <u>preliminary report</u>. The petitioner offers nothing to further support the purported defense.

In sum, the petition fails to set forth a basis for a hearing, let alone the relief sought.

Also, in general, it has long been held that a *habeas* writ may not serve as a substitute for an appeal. (*People v. Lempia* (1956) 144 Cal.App.2d 393, 398.) Likewise, the general rule is that *habeas corpus* cannot serve as a substitute for an appeal, and: "… in the absence of special circumstances constituting an excuse for failure to employ that remedy, the writ will not lie where the claimed errors could have been, but were not, raised upon a timely appeal from a judgment of conviction. (Citations.)" (*Ex parte Dixon* (1953) 41 Cal.2d 758, 759.)

In the current petition, the petitioner does not show the special circumstances that prevented him from presenting these issues on appeal. Since the appeal did address an ineffective assistance of counsel issue, there must be this showing in order to meet the *Dixon* criteria. The petitioner has not done so.

Finally, *habeas corpus* is not an available remedy to review the rulings of the trial court with respect to the admission or exclusion of evidence, or to correct other errors of procedure occurring on the trial. (*Ex parte Lindley* (1947) 29 Cal.2d 709, 723.)

The claimed errors, while styled as ineffective assistance of counsel (discussed, *infra*), are evidentiary and procedural issue[s] and would not be appropriate for the current writ.

As to the allegations of the ineffective assistance of counsel, the petitioner has the burden of proving counsel's conduct fell short of a reasonably competent attorney acting as a diligent advocate. (*Strickland v. Washington* (1984) 466 U.S. 668, 686.) He has not

made even a *prima facie* showing of this as to any counsel.

The petitioner fails to meet the *Strickland* standard. As is well known, the burden of proving a claim of ineffective assistance of appointed counsel is on the petitioner. There are two components to such a claim under the federal or state law. (*Strickland v. Washington, supra*; *People v. Williams* (1988) 4 Cal.3d 883, 937.)

The petitioner must first show that counsel failed to act in a manner to be expected of reasonably competent attorneys acting as diligent advocates. Second, the petitioner must demonstrate that it is reasonably probable that a more favorable result would have been obtained in the absence of counsel's failings.

As to the first element, the petitioner must overcome the "…strong presumption that counsel's conduct falls within the wide range of reasonably professional assistance." (*Strickland v. Washington, supra*, 466 U.S. 668, 689; *People v. Makabali* (1993) 14 Cal.App.4th 847, 853.) The petitioner must demonstrate that any claimed acts or omissions cannot be explained on the basis of any knowledgeable choice of tactics. As has long been held, "[C]ounsel is captain of the ship …" (*People v. Freeman* (1994) 8 Cal.App.4th 450, 485.) That the petitioner might have desired, or now desires, some different action by his attorney is irrelevant. (*People v. Jones* (1971) 16 Cal.App.3d 837, 844.)

In the current petition, the petitioner now seeks to have his trial conducted in a different manner. Despite inquiry from the court and an election not to testify, the petitioner now would like a "do over". That is not an appropriate basis for the petition. Further, as discussed *supra*, the other evidence he now claims would have made a difference is not admissible.

Further, the petitioner: "… while entitled to reasonably competent representation, is not guaranteed a successful defense or even a letter-perfect defense. Even the most competent counsel may from time-to-time make decisions or conduct himself in a manner which might be criticized by other equally competent counsel but that is not the measure of competency of counsel on review by an appellate court. (*People v. Wallin* (1981) 124 Cal.App.3d 479, 484-485.) The petitioner has not demonstrated that trial counsel or even appellate counsel did not act competently in their representation.

As to the second element of the claim of ineffective assistance of counsel, the petitioner has not shown a reasonable probability that, but for counsel's alleged errors, the result of the proceeding would have been different. It has long been held that this reasonable probability is a probability sufficient to undermine confidence in the outcome. This prejudice must be affirmatively proved. It is not sufficient for the petitioner to merely show that any errors could have had some conceivable effect on the outcome. To be entitled to a reversal of judgment on grounds that counsel did not provide adequate assistance, the petitioner must carry his burden of proving prejudice as a "demonstrative reality", not just speculation as to the effect of any errors or omissions of counsel. (*People v. Williams,*

*supra*, 44 Cal.3d 883, 937.)

> In this case, even assuming *arguendo*, that errors occurred, there has been no "demonstrative reality" as to the effect of these supposed errors. The conclusory arguments and statements do not meet the requirements.
>
> The argument concerning the restitution has been abandoned by the petitioner.
>
> In sum, the petitioner fails to state a prima facie claim as to any basis for relief (*People v. Duvall* (1995) 9 Cal.4th 464) and the petition for Writ of *Habeas Corpus* is denied.

(LD 19 at 2-5, emphasis in original.)

<u>Pertinent Background</u>

A review of the petition filed May 18, 2016, with the El Dorado Superior Court provides the necessary context for consideration of this claim for purposes of federal habeas review.  In the state petition, petitioner thoroughly set forth the procedural background related to his state court conviction and the direct appeal that followed, as well as the history related to his collateral review efforts to that point.  (LD 18 at 1-6.)  Petitioner also set forth the grounds for relief, noting the following: "[b]riefly, this writ is based upon the ineffective efforts of [petitioner's] trial counsel who decided to not call any witnesses or introduce any documentary evidence that would have supported a conviction of either second-degree murder or voluntary manslaughter."  (LD 18 at 6.)  Petitioner claimed trial counsel "put on no defense whatsoever and attempted to reduce the nearly certain first-degree conviction to second-degree simply by arguing in his claiming summation that the prosecution had failed to prove deliberation and premeditation beyond a reasonable doubt."  (LD 18 at 6.)  Petitioner stated that a memorandum of points and authorities accompanied the writ providing "a more complete statement of the facts and legal authority" (LD 18 at 6), yet no such points and authorities appear to have been provided.  (<u>See</u> LD 18.) Additionally, petitioner indicated "supporting exhibits of key trial testimony" in support of his claim accompanied the writ petition.  (LD 18 at 6.)  Lastly, petitioner prayed for an order to show cause to issue to respondent, for an evidentiary hearing "to examine all the records and proceedings," and asked that the judgment and sentence be vacated.  (LD 18 at 7.)

As noted above, the lodged copy of the state habeas petition does not include a memorandum of points and authorities.  (LD 18.)  The exhibits attached to the writ include the opinion from the Third District Court of Appeal, a copy of the California Supreme Court's docket pertaining to the petition for review filed with that court, and a copy of this court's order dated April 11, 2016.  (LD 18, Exs. A-C.)  Notably too, at least as to the lodged document provided to this court, no affidavit or declaration appears to have been filed with or provided to the El Dorado County Superior Court in the writ proceeding. (See LD 18.)

Applicable Legal Standards

To prevail on a claim of ineffective assistance of counsel, a petitioner must show that his trial counsel's performance "fell below an objective standard of reasonableness" and that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."  Strickland v. Washington, 466 U.S. 668, 687-88, 694 (1984).

Under the first prong of the Strickland test, a petitioner must show that counsel's conduct failed to meet an objective standard of reasonableness.  Strickland, 466 U.S. at 687.  There is "a 'strong presumption' that counsel's representation was within the 'wide range' of reasonable professional assistance."  Harrington v. Richter, 562 U.S. at 104 (quoting Strickland, 466 U.S. at 689).  Petitioner must rebut this presumption by demonstrating that his counsel's performance was unreasonable under prevailing professional norms and was not the product of "sound trial strategy."  Strickland, 466 U.S. at 688-89.  Judicial scrutiny of defense counsel's performance is "highly deferential," and thus the court must evaluate counsel's conduct from her perspective at the time it occurred, without the benefit of hindsight.  Id. at 689.  "[S]trategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable."  Strickland, 466 U.S. at 690.

The second prong of the Strickland test requires a petitioner to show that counsel's conduct prejudiced him.  Strickland, 466 U.S. at 691-92.  Prejudice is found where "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."  Id. at 694.  A reasonable probability is one "sufficient to undermine confidence in the outcome."  Id. at 693.  "This does not require a showing that counsel's actions

14

'more likely than not altered the outcome,' but the difference between *Strickland*'s prejudice standard and a more-probable-than-not standard is slight and matters 'only in the rarest case.'" <u>Richter</u>, 562 U.S. at 112 (quoting <u>Strickland</u>, 466 U.S. at 693). "The likelihood of a different result must be substantial, not just conceivable." <u>Id.</u>

Analysis

Initially, the undersigned's review of the record and the documentation lodged with this court reveals some discrepancies. For example, petitioner's traverse claims the superior court's determination was unreasonable because "Attorney Adam Weiner filed a supporting declaration in the Superior Court in which he credibly explained that the reports made by Dr. Schaffer and Detective Strasser were first obtained from the Public Defender (after considerable effort) in October 2015 long after a timely direct attack on the conviction could be mounted." (ECF No. 29 at 10.) Yet, as noted previously, the habeas petition lodged with this court does not include counsel's declaration. (<u>See</u> LD 18.) For another example, petitioner's traverse maintains "the record before the Superior Court in support of the writ contained the undisputed preliminary report of Dr. Schaffer which raised considerable doubt as to the first-degree conviction" (ECF No. 29 at 10); but again, the state habeas petition lodged with this court does not contain Dr. Schaffer's preliminary report. (<u>See</u> LD 18.)

As to these examples then, it would seem the superior court's references to a lack of support speaks to these issues. Certainly the instant petition pending before this court includes the declarations of Attorney Weiner (ECF No. 1-2) and petitioner (ECF No. 1-3), as well as Dr. Schaffer's preliminary report and Detective Strasser's report (ECF 1-2 at 5-38), but the record before this court for purposes of reviewing the reasonableness of the state court's determination does not. After <u>Pinholster</u>, review of claims adjudicated on the merits under AEDPA must be based only on "the record that was before the state court that adjudicated the claim on the merits." <u>Cullen v. Pinholster,</u> 563 U.S. 170, 181 (2011). The Court reiterated that AEDPA "demonstrate[d] Congress' intent to channel prisoners' claims first to the state courts. 'The federal habeas scheme leaves primary responsibility with the state courts....'" <u>Id.</u> at 182 (citation omitted) (quoting <u>Woodford v. Visciotti</u>, 537 U.S. 19, 27 (2002) (per curiam)). Consequently, "evidence

15

1    introduced in federal court has no bearing on § 2254(d)(1) review." Id. at 185.

2         Noticeably too, a review of the state habeas petitions filed with the Third District Court of

3    Appeal and the California Supreme Court reveals additional discrepancies. As to the former, the

4    petition for writ of habeas corpus filed in the state court of appeal, a review of the lodged

5    document reveals that while a number of exhibits were appended in support thereof, notably

6    missing are the memorandum of points and authorities and declarations of Attorney Weiner and

7    petitioner, as well as those exhibits designated "sets" one through five, despite the accompanying

8    certificate of service. (See LD 20.) As contrasted with the petition for writ of habeas corpus filed

9    with the California Supreme Court, encompassing the main petition, a memorandum of points and

10   authorities, and approximately seventeen separate exhibits as parts of volumes designated "A"

11   through "C," including petitioner and Attorney Weiner's declarations and the Strasser and

12   Schaffer reports. (See LD 22.)

13        In summary, neither the El Dorado Superior Court nor the Third District Court of Appeal

14   had before it state habeas petitions with relevant documentary support. Only the state habeas

15   petition filed with the California Supreme Court appears to be complete. (Cf. LD 18 & 20 to LD

16   22.)

17        Nevertheless, the state court's finding that petitioner did not state a prima facie case

18   entitling him to relief was not unreasonable.

19        Based on its determination that petitioner's proffered evidence was inadmissible at trial,

20   the state court concluded that counsel could not be found ineffective for failing to offer Dr.

21   Schaffer's preliminary report and testimony or the detective's report. Specifically, the superior

22   court's determination that the evidence petitioner claims should have been proffered by defense

23   counsel was inadmissible (LD 19 at 4) is binding here. "It is not the province of a federal court to

24   reexamine state court determinations of state law questions." Estelle, 502 U.S. at 71-72; see also

25   Wilson v. Corcoran, 562 U.S. at 5 (habeas relief is not available for alleged errors in the

26   interpretation or application of state law); Lewis v. Jeffers, 497 U.S. 764, 780 (1990) ("federal

27   habeas corpus relief does not lie for errors of state law"). See Bradshaw v. Richey, 546 U.S. 74,

28   76 (2005) ("We have repeatedly held that a state court's interpretation of state law, including one

16

announced on direct appeal of the challenged conviction, binds a federal court sitting in habeas

corpus"); Horton v. Mayle, 408 F.3d 570, 576 (9th Cir. 2005) (citing Mullaney v. Wilbur, 421

U.S. 684, 691 (1975)) ("If a state law issue must be decided in order to decide a federal habeas

claim, the state's construction of its own law is binding on the federal court). Petitioner's claim

asks this court to decide a state law issue in order to adjudicate his federal habeas claim.

Moreover, the undersigned notes that Dr. Schaffer's opinion, as proffered in paragraph

five of his declaration submitted in this court (ECF No. 29-1 at 2[3]), could be precluded at trial

because it pertains to whether an element of the charged offense was present or not. California

Penal Code section 28 allows for evidence of mental disease, defect or disorder, "solely on the

issue of whether or not the accused actually formed a required specific intent, premeditated,

deliberated, or harbored malice aforethought, when a specific intent crime is charged." (Cal. Pen.

Code, § 28(a).) However, evidence of mental disease, defect or disorder "shall not be admitted to

show or negate the capacity to form any mental state …." (Cal. Pen. Code, § 28(a).) The statute

does not "limit a court's discretion, pursuant to the Evidence Code, to exclude psychiatric or

psychological evidence on whether the accused had a mental disease, mental defect, or mental

disorder at the time of the alleged offense." (Cal. Pen. Code, § 28(d).) See People v. Coddington,

23 Cal.4th 529, 582 (2000), overruled on unrelated grounds in Price v. Superior Court, 25 Cal.4th

1046, 1069, fn. 13 (2001) ("Sections 28 and 29 permit introduction of evidence of mental illness

when relevant to whether a defendant actually formed a mental state that is an element of a

charged offense, but do not permit an expert to offer an opinion on whether a defendant had the

mental capacity to form a specific mental state or whether the defendant actually harbored such a

mental state").

And, as the handwritten notations on Dr. Schaffer's preliminary report indicate, trial

counsel was aware of the doctor's findings and presumably elected not to proceed with obtaining

---

[3] That paragraph reads as follows: "I stand by all my preliminary conclusions including the one stated on page 28 of my June 2011 preliminary report in which I state that based upon my psychiatric examination, John Leubbers….'committed the act in question on 2/21/11 which led to his arrest for murder as a result of impulsive and emotional behavior rather than because of premeditated planning.'" (See also ECF No. 1-4 at 15: 13-14 [emphasis used].)

a final report for reasons based on strategy or tactics.  That report contains information that could be damaging on cross-examination, including, for example, petitioner's desire to inflict pain upon the victim, petitioner's failure to comply with medical advice regarding treatment of medical conditions, a "history of difficulty controlling his anger at times," reference to a statement to law enforcement by petitioner wherein he said the victim "pissed [him] off for the final time," and a decades-long history of marijuana use.  (See ECF No. 1-2 at 10, 21-25.)  Sound trial strategy, and professional norms, include avoiding the presentation of such evidence.  Strickland, 466 U.S. at 688-690; see, e.g., Wong v. Belmontes, 558 U.S. 15, 24 (2009).  Applying appropriate deference, this court presumes trial counsel was aware of the limitations imposed upon an expert's opinion and testimony where mental state is concerned.   Williams v. Woodford, 384 F.3d 567, 61 (9th Cir. 2004); see also Knowles v. Mirzayance, 556 U.S. 111, 123 (2009) (a habeas court's review of a claim under the Strickland standard is "doubly deferential").  Here, petitioner fails to overcome, and the record does not otherwise rebut, the presumption that trial counsel performed competently.  Strickland, 466 U.S. at 689, 691.

Lastly, the court notes respondent correctly points out that to the extent petitioner argues trial counsel was ineffective for failing to call Dr. Schaffer as a witness, the "Ninth Circuit has held that the lack of an 'affidavit' from the 'alleged witness' is fatal to claims where the petitioner contends trial counsel rendered deficient performance" (ECF No. 27 at 25), and petitioner cannot remedy this deficiency by providing the missing affidavit with his traverse or reply to respondent's answer in this court (ECF No. 29-1 [Declaration of Charles B. Schaffer, M.D., dated 3/5/18]).  This declaration of Dr. Schaffer was not provided to any state court as a part of a petition for writ of habeas corpus.  (LD 18, 20, 22.)  Dows v. Wood, 211 F.3d 480, 486 (9th Cir. 2000).

According to petitioner, Detective Strasser's report, found to be inadmissible by the El Dorado Superior Court in its denial of the habeas petition, included a spontaneous statement going to the issue of provocation for consideration of the need for a voluntary manslaughter instruction (ECF No. 1-4 at 12) and an "opinion that goes to the issue of intent" (ECF No. 1-4 at 13.)  Again, this claim requires the court to consider a state law claim for adjudication, and as

18

1    previously explained, is not a proper subject of federal habeas review.  Wilson v. Corcoran, 562

2    U.S. at 5; Estelle, 502 U.S. at 71-72.

3          Further, the undersigned notes that the state court's determination was not unreasonable.

4    Detective Strasser's information concerning petitioner's purported spontaneous statement was not

5    likely to be found spontaneous in light of the undersigned's review of the record.  In order to meet

6    the applicable exception, California Evidence Code section 1240, petitioner must prove three

7    things:  (1) there must be some occurrence startling enough to produce nervous excitement and

8    render the utterance spontaneous and unreflecting; (2) the utterance must have been before there

9    has been time to contrive and misrepresent, that is, while nervous excitement may be supposed

10   still to dominate and reflective powers to be yet in abeyance; and (3) utterance must relate to

11   circumstances of the occurrence preceding it.  People v. Sanchez, 7 Cal.5th 14, 39-41 (2019); see

12   also People v. Lynch, 50 Cal.4th 693, 752 (2010), overruled on another ground in People v.

13   McKinnon, 52 Cal.4th 610, 637 (2011) (second admissibility requirement related to particular

14   facts and trial court's discretion is particularly broad).  Here, the evidence revealed petitioner left

15   the school grounds after shooting Lacara at about 10:35 a.m. or so, and was arrested at home over

16   an hour later.  (See LD 11 at 143 [petitioner returned to the school about 10:30 a.m.], 158 [same],

17   161 [officer dispatched to school at 10:38 a.m.], 166 [same], 169-70 [it takes about 11-13 minutes

18   to drive from the school to petitioner's residence], 172-74 [detective overheard dispatch,

19   responded to school 20-25 minutes away; once there, he was sent to petitioner's residence;

20   petitioner was arrested shortly after arrival], 110 [school locked down at 10:40 a.m.]; see also

21   ECF No. 1-2 at 34 & ECF No. 1-3 at 4 & 5:17 ["I was arrested about an hour after the killing of

22   Sam Lacara"].)  Given those particular facts, El Dorado Superior Court's finding that the

23   statement was not admissible and that trial counsel not ineffective was not unreasonable.  Richter,

24   562 U.S. at 101, 103.

25         In presenting the defense in this case, despite petitioner's disagreement regarding the

26   strategy used, counsel made strategic decisions within the "wide range of professionally

27   competent assistance."  Strickland, 466 U.S. at 688, 690.  "There are countless ways to provide

28   effective assistance in any given case. Even the best criminal defense attorneys would not defend

                                            19

a particular client in the same way." Id. at 689. "Under Strickland, counsel's representation must be only objectively reasonable, not flawless or to the highest degree of skill." Dows v. Wood, 211 F.3d at 487 (citing Strickland, 466 U.S. at 68-89). "Moreover, counsel's tactical decisions at trial, such as refraining from cross-examining a particular witness or from asking a particular line of questions, are given great deference and must similarly meet only objectively reasonable standards." Id. There is a "strong presumption" that counsel's attention to certain issues to the exclusion of others reflects trial tactics rather than "sheer neglect." Yarborough v. Gentry, 540 U.S. 1, 8 (2003) (per curiam). At a minimum, the state court's determination was not "so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fair-minded disagreements." Richter, 562 U.S. at 103.

The state court's decision was not contrary to, or an unreasonable application of, clearly established federal law, or that such a finding was based on an unreasonable application of the facts. 28 U.S.C. § 2254. As a result, the undersigned recommends this claim be denied.

B. *Ineffective Assistance of Counsel: Testimony of Petitioner*

In ground two, petitioner claims that trial counsel was ineffective for advising petitioner not to testify in his own defense. (ECF No. 1-4 at 17-18.) Respondent maintains the state court's determination was not unreasonable and thus precludes relief. (ECF No. 27 at 26-27.)

Legal Standards

The applicable legal standard for a claim of ineffective assistance of counsel was given above. Concerning petitioner's right to testify as it relates to such a claim, to succeed on this claim, a petitioner must show that his lawyer made an "objectively unreasonable" decision not to call him to testify in the circumstances. United States v. Sanchez-Cervantes, 282 F.3d 664, 671-72 (9th Cir. 2002). A petitioner must also demonstrate a reasonable likelihood that, had his lawyer called him to testify, the jury would have acquitted him of the charges. Id. at 671-72.

A tactical decision exercised by counsel deserves deference when counsel makes an informed decision based on strategic trial considerations and the decision appears reasonable under the circumstances. See Sanders v. Ratelle, 21 F.3d 1446, 1456 (9th Cir. 1994). On the other hand, "it cannot be permissible trial strategy, regardless of the merits or otherwise, for

counsel to override the ultimate decision of a defendant to testify contrary to his advice." United States v. Mullins, 315 F.3d 449, 453 (9th Cir. 2002). This conclusion is so because "a defendant in a criminal case has the right to take the witness stand and testify in his or her own defense." Rock v. Arkansas, 483 U.S. 44, 49 (1987). The defendant may, however, waive this right, either explicitly or implicitly. See United States v. Pino–Noriega, 189 F.3d 1089, 1094 (9th Cir. 1999). Such a waiver may be inferred from a defendant's failure to testify at trial or to notify the trial court of his desire to testify. Id. at 1094-1095. "Although the ultimate decision whether to testify rests with the defendant, he is presumed to assent to his attorney's tactical decision not to testify," but he "can reject his attorney's tactical decision by insisting on testifying, speaking to the court, or discharging his lawyer." United States v. Joelson, 7 F.3d 174, 177 (9th Cir. 1993). See United States v. Nohara, 3 F.3d 1239, 1244 (9th Cir. 1993) (rejecting ineffective assistance of counsel claim predicated upon counsel's waiver of petitioner's right to testify where defendant was silent in face of attorney's decision not to call him as a witness).

Analysis

Petitioner claims trial counsel "convinced him to remain silent" when petitioner "was willing to take the stand and tell the jury what happened," and that petitioner's testimony could have "pointed to either second-degree murder or voluntary manslaughter," and could have allowed for an instruction on voluntary manslaughter where the evidence did not otherwise provide for giving such an instruction. (ECF No. 1-4 at 17-18.)

In support of his petition, petitioner submitted a declaration setting forth the facts to which he was willing to testify at trial. (ECF No. 1-3.) Specifically, in part, that petitioner tried to apologize to Lacara, that he entered Lacara's office with the intent to take his own life, that when he stood up after sitting in front of Lacara's desk, speaking with him, and intending to shoot himself, instead petitioner shot into the desk and did not realize he had shot Lacara. (ECF No. 1-3 at 3-5.) According to petitioner, trial counsel advised against petitioner testifying, warning him he would be subject to "an aggressive cross-examination that would likely result in my conviction for first-degree murder." (ECF No. 1-3 at 4.) Petitioner also contends trial counsel advised him that were he to take the stand, he would be unable to appeal his conviction. (ECF No. 1-3 at 4.)

Petitioner's declaration also expressly states that he "cho[]se to solely rely upon [trial counsel']s advice" and that he understood his "absolute rights" in that regard as stated by the trial court. (ECF No. 1-3 at 5.)

The record indicates trial counsel's decision not to present petitioner's testimony was considered and reasonable. (See LD 11 at 256 [outside the presence of the jury, during a discussion between the court and counsel regarding jury instructions discussed in chambers, trial counsel stated that at that time petitioner would not be taking the stand, but acknowledged he could change his mind], 257 [concerning when to make a record concerning petitioner's decision not to testify, trial counsel stated he would leave it up to the court], 283 [trial counsel states: "I will know by that date whether or not I plan to present evidence at all to attempt to get that instruction put in"]; LD 12 at 292 [on 4/23/12, in response to a query by the court as to whether more evidence would be forthcoming in light of the court's ruling concerning CALCRIM 570, counsel stated: "I don't know on my side. I do not know if Mr. Leubbers will be taking the stand. We had a very long conversation. I went to my office and did as much work as possible and spent many hours yesterday with Mr. Leubbers. Obviously I can't speak to him testifying just yet"], 305 [on 4/24/12, defense counsel advised the court no evidence would be presented on behalf of the defense; the court then advised petitioner of his "absolute right to not take the stand" and "absolute right to testify," asking petitioner "based on your discussions with counsel, that it is your choice not to take the stand," to which petitioner replied "right" and "Yes, it is"].) Counsel's decision to advise petitioner not to testify constitutes an informed strategic decision that is virtually unchallengeable. Strickland, 466 U.S. at 690.

Here, petitioner has not overcome the presumption that he willingly waived his right to testify because he never notified the court that he desired to do so. Joelson, 7 F.3d at 177. Further, petitioner has failed to demonstrate that counsel rendered prejudicially ineffective assistance by advising him to waive his right to testify on his own behalf. The record reveals counsel made a reasonable tactical decision to advise petitioner not to testify. The evidence elicited at trial conflicts with the assertions petitioner now makes by way of his declaration. For but one example, petitioner contends he sat down to talk to Lacara when he arrived, intending to

22

shoot himself to punish Lacara. Yet, Dawn Cooper testified petitioner walked into Lacara's office, "stood in front of Sam's desk and he positioned himself and he shot three times." (LD 11 at 66.) Ms. Cooper also testified she saw petitioner "standing when he first went in and said words to the effect, this is for you mother fucker." (LD 11 at 67.) Joy Fausel testified petitioner returned to the school "through the side door, he had a cell phone in his left hand up to his ear and in his right hand he had a gun." (LD 11 at 144.) Ms. Fausel testified petitioner opened the door to Lacara's office, there was "lots of angry shouting" by petitioner, and then "[t]hree shots were fired." (LD 11 at 145.) Thereafter, Fausel saw petitioner leaning over Lacara's desk with "his hands extended around the gun," pointing downward. (LD 11 at 146-147.)

The record does not indicate that petitioner ever expressed to the trial court that he intended or desired to testify over counsel's objections or advice. Because this decision was his – and his alone – to make, petitioner has failed to show how his counsel was deficient. See Strickland, 466 U.S. at 687-88.

While petitioner may now wish, with the benefit of hindsight, that he had testified at trial, the record reflects that both trial counsel and the court informed petitioner of his right to testify, and that petitioner explicitly waived that right. Because there is a reasonable argument that counsel was not ineffective, that is the end of the question. Sanchez-Cervantes, 282 F.3d at 671-72; see also Richter, 562 U.S. at 101 [relief precluded "so long as 'fairminded jurists could disagree' on the correctness of the state court's decision"]. The determination by the state court was neither contrary to, nor involving an unreasonable application of, Supreme Court precedent. 28 U.S.C. § 2254(d). Hence, petitioner is not entitled to federal habeas relief on this claim and the undersigned recommends it be denied.

C. *Ineffective Assistance of Counsel: Voluntary Manslaughter Instruction*

In his next claim, petitioner contends trial counsel was ineffective for failing to proffer the necessary evidence in order to have the jury instructed on voluntary manslaughter. (ECF No. 1-4 at 18-24.)

Because this claim necessarily relies on the success of his first claim concerning the evidence relating to Dr. Schaffer and Detective Strasser, and the undersigned has recommended

23

this court deny the claim as previously discussed (<u>see</u> section V., subheading A., *ante*), for those same reasons, this claim must also fail. <u>See</u> <u>Rupe v. Wood</u>, 93 F.3d 1434, 1445 (9th Cir. 1996) ("the failure to take a futile action can never be deficient performance").

The undersigned has reviewed the arguments made and the trial court's comments and rulings concerning defense counsel's request that the jury be instructed pursuant to CALCRIM 570.[4] (See LD 11 at 210, 261-280; LD 12 at 287-291.) With this context in mind, a review of the

---

[4] CALCRIM 570 provides as follows:

> A killing that would otherwise be murder is reduced to voluntary manslaughter if the defendant killed someone because of a sudden quarrel or in the heat of passion.
>
> The defendant killed someone because of a sudden quarrel or in the heat of passion if:
>
> 1. The defendant was provoked;
>
> 2. As a result of the provocation, the defendant acted rashly and under the influence of intense emotion that obscured (his/her) reasoning or judgment;
>
> AND
>
> 3. The provocation would have caused a person of average disposition to act rashly and without due deliberation, that is, from passion rather than from judgment.
>
> Heat of passion does not require anger, rage, or any specific emotion. It can be any violent or intense emotion that causes a person to act without due deliberation and reflection.
>
> In order for heat of passion to reduce a murder to voluntary manslaughter, the defendant must have acted under the direct and immediate influence of provocation as I have defined it. While no specific type of provocation is required, slight or remote provocation is not sufficient. Sufficient provocation may occur over a short or long period of time.
>
> It is not enough that the defendant simply was provoked. The defendant is not allowed to set up (his/her) own standard of conduct. You must decide whether the defendant was provoked and whether the provocation was sufficient. In deciding whether the provocation was sufficient, consider whether a person of average disposition, in the same situation and knowing the same facts, would have reacted from passion rather than from judgment.
>
> [If enough time passed between the provocation and the killing for a

24

record, in light of the evidence petitioner claims should have been proffered by defense counsel, reveals Dr. Schaffer's report is inconsistent with the defense theory – that petitioner reacted only after Lacara took his keys away and told him to go home and cool off because at that point petitioner believed he had been fired – because the doctor's report identifies the events of the previous day concerning the hiring process as the trigger. More particularly, Dr. Schaffer's report provides, in relevant part, that "Ms. Leubbers's description of the situation leading up to the incident was similar to that provided to this examiner by Leubbers. The triggering event was the hiring of a custodian at Mr. Leubbers's school." (ECF No. 1-2 at 28.) The same can be said of Detective Strasser's report – it too is inconsistent with the defense theory and references how upset petitioner was with the hiring process and events of the previous day. (See ECF No. 1-2 at 36-37.)

Defense counsel was not ineffective for failing to offer either report as both were inconsistent with counsel's strategy. In any event, fairminded jurists could disagree. Richter, 562 U.S. at 101. In sum, the state court's determination was neither contrary to nor an unreasonable application of Supreme Court authority. 28 U.S.C. § 2254(d). As a result, the undersigned recommends petitioner's claim of ineffective assistance of counsel for a failure to present evidence sufficient to warrant an instruction on voluntary manslaughter should be denied.

D. *Ineffective Assistance of Counsel: Closing Argument*

In his final claim, petitioner complains trial counsel was ineffective for conceding intent to kill and malice aforethought during closing argument to the jury. (ECF No. 1-4 at 24-26.) Respondent counters that the state court's determination was reasonable and precludes relief. (ECF No. 27 at 27-33.)

---

person of average disposition to "cool off" and regain his or her clear reasoning and judgment, then the killing is not reduced to voluntary manslaughter on this basis.]

The People have the burden of proving beyond a reasonable doubt that the defendant did not kill as the result of a sudden quarrel or in the heat of passion. If the People have not met this burden, you must find the defendant not guilty of murder.

The last reasoned rejection of petitioner's claim is the decision of the California Court of Appeal for the Third Appellate District on petitioner's direct appeal.[5]  The state court addressed this claim as follows:

*Defense Counsel's Concession of Intent to Kill*

> Defendant contends his trial counsel rendered ineffective assistance, and "effectively abandoned" defendant, in his summation when he conceded defendant's "guilt of second degree murder, conceded intent to kill, implicitly conceded premeditation, and failed to argue the facts and law to support his chosen theory."

> In his summation, defendant's trial counsel argued as follows:

> "[A]s I stated in my opening statement to you last week, yes, [defendant] with the intent to kill went to Mr. Lacara's office and killed him. He did. That was a surprise maybe to some of you, but he did do that. But I just don't believe the People have proven beyond a reasonable doubt that it was with premeditation and deliberation.

> "I was not able to keep my promise to you and I apologize for that. I told you this case was about one thing and that was whether or not [defendant] had malice aforethought when he entered the office.

> "Based on the evidence presented, it appears [defendant] did have malice aforethought in this matter at the time he entered Mr. Lacara's office. But, again, however, what he did not have was the premeditation and the deliberation. I believe clearly this is a willful act, I don't think there's much disputing that.

> "But the evidence does show that [defendant's] actions I believe were made rashly, impulsively and without careful consideration.

> "I mentioned to you in opening that sometimes we stand so close to a painting we don't see the big picture. [The prosecutor] is a very good prosecutor. And in living in El Dorado County you are very lucky to have him, but he's focusing on this argument over hiring a night janitor. I don't believe that has anything to do with the killing. I believe the evidence is and—well, let me back up.

---

[5] Petitioner also presented this claim, as it is presented in this court, to the California Supreme Court in the state habeas petition filed in June 2017.  (LD 22.)  That court denied the petition without comment on October 25, 2017.  (LD 23.)  Richter, 562 U.S. at 99 ("Where a federal claim has been presented to a state court and the state court has denied relief, it may be presumed that the state court adjudicated the claim on the merits in absence of any indication or state-law procedural principles to the contrary").

"[The prosecutor] in his closing his theory appears to be it's all based on this argument starting the day before on Tuesday. We heard testimony that Mr. Lacara and [defendant] played golf on Sunday, and Monday everything was fine. Tuesday they go to the hiring meetings. I believe we had Mr. Lacara, Ms. Fausel, [defendant] and the person by the name of Nancy Lynch, which [sic] at the time was the school district superintendent. The evidence we heard was everything was fine. It was very cordial. There was some letting off some steam with [defendant] in the afternoon when he spoke to Ms. Tracy and Ms. Cooper. If it was really over—it being the killing of Mr. Lacara—if it was really over the hiring process and my client had all this time to premeditate and deliberate and think about it, wouldn't he have been waiting for Mr. Lacara right when he comes— or right when he arrived at school? That's not what happened. It took another argument in [defendant's] office, according to Ms. Tracy. It took many phone calls. It took the taking away of the keys, which is the biggest fact in this case.

"[Defendant] was the janitor, the daytime janitor, full-time janitor. Without his keys, he's not the janitor anymore.

"So I don't believe this disagreement of who they are hiring for the night janitor has anything to do with this argument. In taking the keys of the janitor, we don't know where he went. We did hear testimony he left. Gun could have been with him the whole time. Gun could have been in the office.

"We do have a stipulation, [the prosecutor] and I. You will get the stipulation that one of the bullets, a 38 was located in his office.

"There was no evidence presented whatsoever that [defendant], other than speculation, we can't go into his mind, no evidence that he reflected at all. The keys were taken. He was told to go home and cool off. That's how heated he was. Even Mr. Lacara noticed how heated he was. The arguments were all heated, but again, I don't believe the arguments have anything to do with this.

"Now, we heard testimony—strike that. We went through all the testimony.

"We have a willful act, yes. But is it deliberate and premeditated? [The prosecutor] went through what the law is basically on those issues, I'm going to do it a little bit more.

"Deliberate. Again, I think willfulness we have. We have an intentional act. I don't think there's much dispute there. But deliberate means one that [is] arrived at or determined upon as the result of careful thought and weighing of considerations for and against the

proposed course of action and having those consequences of killing in mind.

"We just heard no evidence of that. Yes, he came in. We don't exactly know the time. It appears to be 30, 35, maybe 40 minutes from when he was told to go home and cool off after taking the keys. The reflection must be substantially more than the mere intent to kill. Because we have that here, we do have an intent to kill, unfortunately.

"Premeditated means he considered it beforehand. Again, [the prosecutor] appears to be focusing on this argument about hiring the night janitor. It's not to replace him. There would be no reason for him to be thinking of killing anybody over hiring a night janitor.

"Yes, I'll show them, they don't know who they are messing with. He didn't kill anybody else.... The argument over the night janitor isn't what this is about. This is my client's belief that he lost his job. Mr. Lacara even wrote the day[']s events from that morning on his pad of paper.

"And again, premeditation can occur in a brief period of time. There is no time limit. No bright line rule you have to think about it for five minutes. If you think about it for four minutes 30 seconds, it's not premeditation. There is no time. But the true test is not the duration of time as much as it is the extent of reflection. And that is what we heard no evidence of, any reflection. Okay.

"The only, I guess, way you get to that is if you do believe this is all over the hiring of a night janitor [defendant] may have disagreed with.

"Now, I would like for you to pay attention, pay very close attention, please—I will wait. Please pay very close attention to all the jury instructions because they are all very, very important.

"But I would really like for you to pay attention to numbers 224, 359, 522. I'm sorry, 521 and 522. Again, every one is important.

"I would like to remind all of you, please, this is very, very important, do not forget your promise to [defendant], to the Court, to [the prosecutor], to myself, that you will not hold it against [defendant] for not testifying. And that you will hold [the prosecutor] to that burden of proof that he must prove every element; and premeditation and deliberation is an element of first degree murder. Please hold him to that burden of proof.

"And as [the prosecutor] did point out on his closing, this abiding conviction. Everybody's got their own version of that I guess. But

[the prosecutor]—I've used his example as well. If I come to you 15 years from now and knock on your door, before you slam it on me, I will try to get one question in, and that will be do you still feel right about your decision in this case? And if you do, that is your abiding conviction. It is.

"But proof beyond a reasonable doubt is a very, very high standard. Even if you think he had premeditation and deliberation, that's a not guilty of first. Even if you highly suspect he had premeditation and deliberation, it's a not guilty. It's only proof beyond a reasonable doubt.

"I thank you for your time. I know you will do the right thing and come back with a guilty verdict on second degree murder. Thank you."

"'''[I]n order to demonstrate ineffective assistance of counsel, a defendant must first show counsel's performance was 'deficient' because his 'representation fell below an objective standard of reasonableness ... under prevailing professional norms.' [Citation.] Second, he must also show prejudice flowing from counsel's performance or lack thereof. [Citation.] Prejudice is shown when there is a 'reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome.' [Citations.]" [Citation.]'" (*People v. Avena* (1996) 13 Cal.4th 394, 418, footnote omitted.)

"'''[If] the record on appeal sheds no light on why counsel acted or failed to act in the manner challenged[,] ... unless counsel was asked for an explanation and failed to provide one, or unless there simply could be no satisfactory explanation," the claim on appeal must be rejected.' [Citations.] A claim of ineffective assistance in such a case is more appropriately decided in a habeas corpus proceeding. [Citations.]" (*People v. Mendoza Tello* (1997) 15 Cal.4th 264, 266–267.)

Defendant's trial counsel was not asked why he conceded second degree murder and focused his argument on the absence of premeditation and deliberation. Because there was no dispute as to the fact of death or defendant's identity as the shooter, no claim of justifiable homicide, and, as we have explained (part I, *ante*), no substantial evidence of manslaughter, a verdict of guilty of second degree murder was the only outcome remaining that would have been favorable to defendant. In short, counsel's goal by this point in the proceedings, given the evidence and the court's ruling on a voluntary manslaughter instruction, was quite understandably to do what he could to avoid a verdict of first degree murder. Admitting what he

had to admit given the state of the evidence was a perfectly reasonable tactic with the jury, in part because it lent credibility to his argument overall. Because there could be a satisfactory explanation for counsel's concession, the matter is more appropriately addressed via habeas corpus.

Defendant complains that his trial counsel "implicitly conceded premeditation" when he told the jury that defendant "with the intent to kill went to Mr. Lacara's office and killed him." Defendant claims this statement implies premeditation because it concedes he "formed the intent to kill *before* going to Lacara's office." (Original italics.) But trial counsel went on to argue that defendant's "actions I believe were made rashly, impulsively and without careful consideration." Counsel's argument tracked CALCRIM No. 521, "First Degree Murder (Pen.Code, § 189)," which told the jury that "[t]he length of time the person spends considering whether to kill does not alone determine whether the killing is deliberate and premeditated. The amount of time required for deliberation and premeditation may vary from person to person and according to the circumstances. A decision to kill made rashly, impulsively, or without careful consideration is not deliberate and premeditated." Under these instructions, counsel's statement that defendant formed the intent to kill before going to Lacara's office did not concede premeditation or first degree murder.

Defendant claims trial counsel was ineffective in that he argued the issue of provocation (which would reduce the murder from first degree to second degree) only by reference to numbers that did not appear on the written jury instructions. After asking the jury to "[p]lease pay very close attention to all the jury instructions because they are all very, very important," trial counsel added, "I would really like for you to pay attention to numbers ... 521 and 522. Again, every one is important." The numeric references were to CALCRIM No. 521, quoted in part above, and CALCRIM No. 522, "Provocation: Effect on Degree of Murder."

Defendant notes that the jury had no way to correlate trial counsel's numbers to the unnumbered written instructions furnished by the court. But it is not reasonably probable that the jury reacted to its inability to locate "521 and 522" by concluding, contrary to trial counsel's argument, that all or any portion of the court's instructions were not "very, very important." Under these circumstances, the inartful numeric references would not have caused any reasonable juror to disregard or overlook any "very, very important" instruction. No prejudice is shown. (*People v. Avena, supra*, 13 Cal.4th at p. 418.)

Defendant also challenges this portion of trial counsel's argument: "If ... the killing of Mr. Lacara ... was really over the hiring process and [defendant] had all this time to premeditate and deliberate and

30

think about it, wouldn't he have been waiting for Mr. Lacara right when he comes—or right when he arrived at school? That's not what happened. It took another argument in [defendant's] office, according to Ms. Tracy. It took many phone calls. *It took the taking away of the keys, which is the biggest fact in this case*." (Italics added.)

Defendant complains that trial counsel "did not tell the jury why" Lacara's taking of defendant's keys "was important or what use they could make of it." But counsel's remarks make plain that, because the impetus for the killing was the taking of the keys and not the hiring process the previous day, defendant did not have "all this time to premeditate and deliberate and think about" killing Lacara. Trial counsel's argument invited the jury to use the taking of the keys for the important purpose of distinguishing between first and second degree murder. No ineffective assistance is shown.

(People v. Leubbers, slip op. at 13-19; see also LD 2.)

### Applicable Legal Standards

As noted previously, the applicable legal standard for a claim of ineffective assistance of counsel were given above.

### Analysis

The Third District Court of Appeal's findings are not contrary to, nor do those findings involve, an unreasonable application of Supreme Court precedent. 28 U.S.C. § 2254(d). Further, as to the claim presented to the California Supreme Court in the habeas proceedings, an independent review of the record also reveals the state court's decision was an objectively reasonable application of clearly established federal law. Plascencia v. Alameida, 467 F.3d 1190, 1197-98 (9th Cir. 2006); Himes v. Thompson, 336 F.3d at 853.

More particularly, a review of trial counsel's closing argument (LD 12 at 337-42) reveals the state court determinations to be reasonable. Counsel was not ineffective for conceding petitioner had intent to kill in light of the evidence established at trial. Counsel reasonably focused on the evidence that supported his argument that petitioner lacked the necessary premeditation and deliberation required for a guilty verdict of first degree murder. Counsel specifically argued that petitioner's actions "were made rashly, impulsively and without careful consideration" (LD 12 at 337-38) arising after the incident occurring the morning of Lacara's

death, to wit: Lacara's taking petitioner's keys and telling him to "go home and cool off" (LD 12 at 339). Counsel argued to the jury, with specific regard to deliberation, that it "heard no evidence of" "careful thought and weighing of considerations for and against the proposed course of action and having those consequences of killing in mind" by petitioner. (LD 12 at 339-40.) Regarding premeditation in particular, counsel stressed again that the "argument over the night janitor [position] isn't what this is about. This is about my client's belief that he lost his job" and that the jury "heard no evidence of, any reflection" because "the true test is not the duration of time as much as it is the extent of reflection." (LD 12 at 340.) Trial counsel reminded the jury of the prosecution's high burden of beyond a reasonable doubt as to every element, stressing that "premeditation and deliberation is an element of first degree murder." (LD 12 at 341.)

Trial counsel's concession allowed for focus upon a meritorious argument – that it was not first degree murder but rather second degree murder because petitioner lacked the required premeditation and deliberation required for a first degree murder conviction. See Yarbrough v. Gentry, 540 U.S. at 5-6, 9 (recognizing the broad deference to which counsel is entitled in making tactical decisions in closing argument & that concessions may be warranted and not ineffective assistance of counsel because "counsel might have built credibility with the jury and persuaded it to focus on the relevant issues in the case"); McDowell v. Calderon, 107 F.3d 1351, 1358 (9th Cir.) (no ineffective assistance where counsel's decision at closing argument to concede guilt of felony murder but instead argued that the defendant's intent to kill was "best choice from a poor lot"), amended at 116 F.3d 364 (9th Cir.), vacated in part by 130 F.3d 833, 835 (9th Cir. 1997) (en banc); United States v. Swanson, 943 F.2d 1070, 1075-76 (9th Cir. 1991) ("in some cases a trial attorney may find it advantageous to his client's interests to concede certain elements of an offense or his guilt of one of several charges"); see also People v. Jackson, 28 Cal.3d 264, 293 (1980) (counsel who conceded defendant's guilt in closing argument was not incompetent in light of overwhelming evidence of defendant's guilt), overruled on other grounds, People v. Cromer, 24 Cal.4th 889, 901 n.3 (2001).

Under Strickland, reasonable tactical decisions, including decisions with regard to the presentation of the case, are "virtually unchallengeable." Strickland, 466 U.S. at 687-90.

Because counsel's closing statement was driven by strategy, and <u>Strickland</u> requires deference to informed strategic choices, the state court findings that counsel did not perform ineffectively during closing argument are neither contrary to, nor an unreasonable application of, Supreme Court authority.  28 U.S.C. § 2254(d).  As a result, the undersigned recommends this claim should also be denied.

VI.  <u>Request for Evidentiary Hearing</u>

Petitioner requests an evidentiary hearing on his ineffective assistance of counsel claims. Petitioner's request should be denied because review of claims under § 2254(d) "is limited to the record that was before the state court that adjudicated the claim on the merits."  <u>Pinholster</u>, 563 U.S. at 181; <u>see also</u> <u>Sully v. Ayers</u>, 725 F.3d 1057, 1075 (9th Cir. 2013) (an "evidentiary hearing is pointless once the district court has determined that § 2254(d) precludes habeas relief"); <u>Gulbrandson v. Ryan</u>, 738 F.3d 976, 994 (9th Cir. 2013) ("the state court's rejections of [the petitioner's] claims were neither contrary to, nor involved unreasonable applications, of <u>Strickland</u>. Thus, <u>Pinholster</u> bars a habeas court from any further factual development on these claims").

VII.  <u>Conclusion</u>

Accordingly, IT IS HEREBY RECOMMENDED that petitioner's application for a writ of habeas corpus be denied.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within fourteen days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."   If petitioner files objections, he shall also address whether a certificate of appealability should issue and, if so, why and as to which issues.  A certificate of appealability may issue under 28 U.S.C. § 2253 "only if the applicant has made a substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(3).  Any response to the objections shall be filed and served within fourteen days after service of the objections.  The parties are advised that failure to file objections within the

specified time may waive the right to appeal the District Court's order.  <u>Martinez v. Ylst</u>, 951

F.2d 1153 (9th Cir. 1991).

Dated:  September 23, 2019

_____
KENDALL J. NEWMAN
UNITED STATES MAGISTRATE JUDGE

/lueb2347.157